UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| David P. Seelman,<br><br>　　　　　Plaintiff,<br>v.<br><br>Barclays Bank of Delaware, Bank of America Corporation and Wells Fargo Financial, Inc.,<br><br>　　　　　Defendants. | Civil File No.: 12-cv-806<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### **JURISDICTION**

1. Jurisdiction of this Court arises under 15 U.S.C. § 1681 et seq. and 28 U.S.C §§ 1331 and 1367.

### **PARTIES**

2. Plaintiff David P. Seelman (hereinafter "Plaintiff or Seelman") is a natural person who resides in the City of Deerfield, State of Wisconsin, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

3. Defendant Barclays Bank of Delaware (hereinafter "Defendant Barclays") is a national association regulated by the Federal Deposit Insurance Corporation and is authorized to do business in Wisconsin. Defendant Barclays has a principal place of business at 100 South West Street, Wilmington, Delaware, 19801. Defendant Barclays is a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b).

1

4. Defendant Bank of America Corporation ("Defendant BOA") is a national association regulated by the Federal Reserve System and is authorized to do business in Wisconsin. Defendant BOA is headquartered at 100 North Tryon Street, Charlotte, North Carolina, 28255. Defendant BOA is a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b).

5. Defendant Wells Fargo Financial, Inc. (hereinafter "Defendant WF") is a financial company authorized to do business in Wisconsin. Defendant WF is headquartered at 800 Walnut Street, Des Moines, Iowa, 50309 with a registered Agent of service of Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin, 53717. Defendant WF is a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b).

## FACTUAL ALLEGATIONS ALL DEFENDANTS

6. Due to unforeseen economic circumstances Plaintiff feared that he might be unable to keep up with his bills but he was not late in making payments in 2009.

7. In order to protect his credit profile and in an attempt to stay current and pay off his creditors, Plaintiff entered into a voluntary amortization of his debts by filing a Wisconsin Chapter 128.21 proceeding in Dane County Circuit Court.

8. The Chapter 128 proceeding was filed and assigned case #09-CV-6299.

9. The Dane County Circuit Court issued an Order on December 21, 2009 appointing Susan A. Schuelke ("Trustee Schuelke) as Plaintiff's Trustee for the Wisconsin Chapter 128 plan.

10. On or about January 5, 2010, Plaintiff's Trustee Schuelke sent the Notice to

Creditors to all Defendants advising that Plaintiff filed certain debts under Section 128.21 of the Wisconsin Statutes, in the Circuit court of Dane County, Wisconsin.

11. Upon information and belief, Defendants received notice of Plaintiff's Chapter 128 plan via U.S. Mail on or about January 5, 2010, and were given a chance to either object or accept the payment plan at a meeting on January 19, 2010.

12. The January 5, 2010 Notice to Creditors, including the Defendants, stated "If you agree with the amount of indebtedness set forth in the debtor's Affidavit of Debts, then it is requested, but not required to file a claim and the amount of indebtedness set forth on the affidavit shall be considered the amount due for purposes of these proceedings." and Defendants were further notified that they were prohibited from adding interest, late charges, or related administrative costs or fees to Plaintiff's balances after the date of his Chapter 128 petition.

13. The January 5, 2010 Notice to Creditors further stated "THIS IS NOT A BANKRUPTCY AND SHOULD NOT BE REPORTED AS ONE".

14. Plaintiff's creditors, including but not limited to Defendants, accepted the plan and did not file an objection with the Dane County court.

15. On February 17, 2010, the Dane County Circuit Court Judge signed the Order Approving Plan for Plaintiff's Chapter 128.

16. By operation of Wisconsin Statute 128.21, Plaintiff's creditors, including but not limited to Defendants, were to cease further collection activity, which would include by implication, but not at all limited, to progressively reporting adverse credit accounts as increasingly late, past due or charged off.

17. Plaintiff made payments since January 2010 to the trustee as ordered by the Dane County Court and in turn those payments were distributed by the Trustee to the Creditors listed in the Chapter 128 Plan.

18. In October 2011, Plaintiff requested his credit reports from the 3 national credit reporting agencies (CRAs): Trans Union, Experian and Equifax/CSC.

19. In October 2011, Plaintiff received a credit report from each of the CRAs.

20. Over the winter of 2011 - 2012, Plaintiff reviewed and attempted to understand the reports and noticed that the Defendants' reporting of his various accounts were inaccurate and incomplete based upon his Chapter 128 payments.

## FACTUAL ALLEGATIONS AGAINST BARCLAYS BANK OF DELAWARE

21. Plaintiff incorporate by reference paragraphs 7 through 20 as though fully stated herein.

22. Plaintiff's Chapter 128.21 Wis. Stats. filed with the court listed Midwest Airlines Card Services a/k/a Barclays Bank of Delaware (hereinafter "Barclays") Account No. XXXX-XXXX-XXXX-9873 as a debtor with an amount of $6,995.93.

23. No objection was filed by Barclays after the January 5, 2010 Notice to Creditors and a meeting of the creditors was held on January 10, 2010.

24. Plaintiff disputed the Barclays account being reporting to the CRAs in March 2012.

25. Plaintiff's dispute instructed the CRAs that his Barclays was being reported inaccurately, that the payments were never late because Barclays was receiving payments from Trustee Schuelke for the Chapter 128 plan Plaintiff had entered.

## *EXPERIAN DISPUTE*

26. On March 17, 2012, Plaintiff specifically disputed the Barclays account with Experian and explained that the account should not be reported as past due in accordance with his Wisconsin Chapter 128 payment plan.

27. Upon information and belief, Experian forwarded Plaintiff's March 17, 2012 dispute letter to Barclays and instructed it to investigate the accuracy of its reporting.

28. Plaintiff received Experian's Dispute Results (Report Number: 1797-2855-98) dated April 13, 2012 in response to his March 17, 2012 dispute letter which revealed and Plaintiff was shocked to see that the dispute results for Barclays account stated "Updated" with the tradeline being reported as: "BARCLAYS BANK DELAWARE – Recent balance: $4,382 as of Apr 2012, Status: Closed, Comment: This item was updated from our processing of our dispute in Apr 2012", and showed late payments for several months (13 of 21) during February 2010 through October 2011.

29. Barclays' reporting failed to acknowledge Barclays' consent to the Ch 128 plan and failed to note the account was current.

30. Thus, in response to Plaintiff's dispute to Experian, Barclays failed to conduct a reasonable investigation, failed to update its tradeline to accurately and completely reflect the reality of Plaintiff's account and therefore violated 15 U.S.C. §1681s-2(b).

31. Barclays' failure to conduct a reasonable investigation and failure to accurately and completely update its tradeline with Plaintiff was willful.

### *EQUIFAX/CSC DISPUTES*

32. On March 17, 2012, Plaintiff specifically disputed the Barclays account with Equifax and explained that the account should not be reported as past due in accordance with his Wisconsin Chapter 128 payment plan.

33. Upon information and belief, Equifax/CSC forwarded Plaintiff's March 17, 2012 dispute letter to Barclays and instructed it to investigate the accuracy of its reporting.

34. Plaintiff received CSC's April 16, 2012 reinvestigation report #2093038898, in response to his dispute letter. Plaintiff was shocked to see that the investigation results for the Barclays account stated "The status of this account has been updated." with the tradeline being reported as: "Barclays Bank Delaware - Balance: $4,382" and showed late payments for several months (13 of 19) during March 2010 through October 2011.

35. Barclays' reporting failed to indicate in any way that Plaintiff disputed his Barclays account or acknowledged Barclays' consent to the Ch 128 plan, failed to note the account was current.

36. Thus, in response to Plaintiff's dispute to Equifax, Barclay's failed to conduct a reasonable investigation, failed to update its tradeline to accurately and completely reflect the reality of Plaintiff's account and therefore violated 15 U.S.C. §1681s-2(b).

37. Barclay's failure to conduct a reasonable investigation and failure to accurately and completely update its tradeline with Plaintiff was willful.

## *TRANS UNION DISPUTE*

38. On March 17, 2012, Plaintiff specifically disputed the Barclays account with Trans Union and explained that the account should not be reported as past due in accordance with his Wisconsin Chapter 128 payment plan.

39. Upon information and belief, Trans Union forwarded Plaintiff's March 17, 2012 dispute to Barclays and instructed it to investigate the accuracy of its reporting.

40. Plaintiff received Trans Union's April 20, 2012 investigation report (File No.: 311941125), in response to his dispute letter. Plaintiff was stunned to see that the investigation results for the Barclays account stated "NEW INFORMATION BELOW" with the tradeline being reported as: "BARCLAYS BANK DELAWARE - Balance: $4,190, Pay Status: Current; Paid or Paying as Agreed" and was showed late payments (13 months out of 20 months) during March 2010 through October 2011.

41. Barclays' reporting failed to indicate in any way that Plaintiff disputed his Barclays account or acknowledged Barclays' consent to the Ch 128 plan and failed to note the account was current.

42. Thus, in response to Plaintiff's dispute to Trans Union, Barclays failed to conduct a reasonable investigation, failed to update its tradeline to accurately and completely reflect the reality of Plaintiff's account and therefore violated 15 U.S.C. §1681s-2(b).

43. Barclays' failure to conduct a reasonable investigation and failure to accurately and completely update its tradeline with Plaintiff was willful.

## FACTUAL ALLEGATIONS AGAINST BANK OF AMERICA

44. Plaintiff incorporate by reference paragraphs 7 through 20 as though fully stated herein.

45. Plaintiff's Chapter 128.21 Wis. Stats. filed with the court listed Bank of America Account No. XXXX-XXXX-XXXX-8151 as a debtor with an amount of $3,560.17.

46. No objection was filed by Bank of America after the January 5, 2010 Notice to Creditors and a meeting of the creditors was held on January 10, 2010.

47. Plaintiff disputed the Bank of America account being reported to the CRAs in March 2012.

48. Plaintiff's dispute instructed the CRAs that his Bank of America was being reported inaccurately, that the payments were never late because Bank of America was receiving payments from Trustee Schuelke for the Chapter 128 plan Plaintiff had entered.

### *EXPERIAN DISPUTE*

49. On March 17, 2012, Plaintiff specifically disputed the Bank of America account with Experian and explained that the account should not be reported as past due in accordance with his Wisconsin Chapter 128 payment plan.

50. Upon information and belief, Experian forwarded Plaintiff's March 17, 2012 dispute letter to Bank of America and instructed it to investigate the accuracy of its reporting.

51. Plaintiff received Experian's Dispute results dated April 13, 2012, in response to his March 17, 2012 dispute letter. Plaintiff was shocked to see that the dispute results for Bank of America account stated "Remains" with the tradeline being reported as: "BANK OF AMERICA – Recent balance: $1,350 as of Apr 2012, Status: Open, This item remained unchanged from our processing of your dispute in Apr 2012." and showed late payments for February and March 2010.

52. Bank of America's reporting failed to acknowledge Bank of America's consent to the Ch 128 plan and failed to note the account was current.

53. Thus, in response to Plaintiff's dispute to Experian, Bank of America failed to conduct a reasonable investigation, failed to update its tradeline to accurately and completely reflect the reality of Plaintiff's account and therefore violated 15 U.S.C. §1681s-2(b).

54. Bank of America's failure to conduct a reasonable investigation and failure to accurately and completely update its tradeline with Plaintiff was willful.

### *TRANSUNION DISPUTE*

55. On March 17, 2012, Plaintiff specifically disputed the Bank of America account with Trans Union and explained that the account should not be reported as past due in accordance with his Wisconsin Chapter 128 payment plan.

56. Upon information and belief, TransUnion forwarded Plaintiff's March 17, 2012 dispute to Bank of America and instructed it to investigate the accuracy of its reporting.

57. Plaintiff received Trans Union's April 20, 2012 investigation report, in response to his dispute letter. Plaintiff was shocked to see that the investigation results for the Bank of America account stated "VERIFIED, NO CHANGE" with the tradeline being reported as: "BANK OF AMERICA - Balance: $1,427, Pay Status: Current; Paid or Paying as Agreed" and showed late payments for February and March 2010.

58. Bank of America's reporting failed to indicate in any way that Plaintiff disputed his Bank of America account or acknowledged Bank of America's consent to the Ch 128 plan.

59. Thus, in response to Plaintiff's dispute to TransUnion, Bank of America failed to conduct a reasonable investigation, failed to update its tradeline to accurately and completely reflect the reality of Plaintiff's account, failed to note that Plaintiff disputed the account and therefore violated 15 U.S.C. §1681s-2(b).

60. Bank of America's failure to conduct a reasonable investigation and failure to accurately and completely update its tradeline with Plaintiff was willful.

**FACTUAL ALLEGATIONS AGAINST WELLS FARGO FINANCIAL**

61. Plaintiff incorporate by reference paragraphs 7 through 20 as though fully stated herein.

62. Plaintiff's Chapter 128.21 Wis. Stats. filed with the court listed Wells Fargo

Financial Account No. XXXX-XXXX-XXXX-4889 as a debtor with an amount of $8,846.96.

63. No objection was filed by Wells Fargo Financial after the January 5, 2010 Notice to Creditors and a meeting of the creditors was held on January 10, 2010.

64. Plaintiff disputed the Wells Fargo Financial account being reported to the CRAs in March 2012.

65. Plaintiff's dispute instructed the CRAs that his Wells Fargo Financial account was being reported inaccurately, that the payments were never late because Wells Fargo Financial was receiving payments from Trustee Schuelke for the Chapter 128 plan Plaintiff had entered.

### *EXPERIAN DISPUTE*

66. On March 17, 2012, Plaintiff specifically disputed the Wells Fargo account with Experian and explained that the account should not be reported as past due in accordance with his Wisconsin Chapter 128 payment plan.

67. Upon information and belief, Experian forwarded Plaintiff's March 17, 2012 dispute letter to Wells Fargo and instructed it to investigate the accuracy of its reporting.

68. Plaintiff received Experian's Dispute results dated April 13, 2012, in response to his March 17, 2012 dispute letter. Plaintiff was shocked to see that the dispute results for the Wells Fargo account stated "Updated" with the tradeline being reported as: "WELLS FARGO FINANCIAL CARDS – Recent balance: $4,796 as of Apr 2012, Status: Closed, This item was updated from our processing of your

dispute in Apr 2012." and showed late payments for February through September 2010.

69. Wells Fargo's reporting failed to acknowledge Well Fargo's consent to the Ch 128 plan and failed to note the account was current.

70. Thus, in response to Plaintiff's dispute to Experian, Wells Fargo failed to conduct a reasonable investigation, failed to update its tradeline to accurately and completely reflect the reality of Plaintiff's account and therefore violated 15 U.S.C. §1681s-2(b).

71. Wells Fargo's failure to conduct a reasonable investigation and failure to accurately and completely update its tradeline with Plaintiff was willful.

## DAMAGES

72. Defendants, thus, by so continuing to report late payments, failed to conduct a reasonable investigations into Plaintiff's disputes, failed to give notice of the "disputes", and failed to update the tradelines accurately and completely to demonstrate the Chapter 128 plan and therefore violated 15 U.S.C. §1681s-2(b).

73. As a result of Defendants' violations of 15 U.S.C. §1681s-2(b) Plaintiff suffered damage in the form of credit denials, reduction in existing credit and depletion of his credit scores.

74. Plaintiff further suffered emotional distress, helplessness, hopelessness, loss of sleep, frustration, irritation, marital stress, anxiety and fear as a result of Defendants' conduct aforementioned.

75. As a result of Defendants' violations, Plaintiff is entitled to actual, statutory and punitive damages in addition to attorney's fees and costs pursuant to the Fair Credit Reporting Act cited above.

## TRIAL BY JURY

76. Plaintiff is entitled to and hereby demands a trial by jury. U.S. Const. Amend. 7. Fed. R. Civ. P. 38.

## CAUSES OF ACTION

### COUNT I.

### VIOLATION OF THE FAIR CREDIT REPORTING ACT – 15 U.S.C. § 1681, *et seq*. – ALL DEFENDANTS

77. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

78. Defendants willfully and/or negligently violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, and failing to review all relevant information available to Defendants, and failing to update its tradeline(s) as disputed.

79. Defendants' conduct, action and inaction were willful, rendering each of them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n of the Act (FCRA).

80. Plaintiff is entitled to recover costs and attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**WHEREFORE**, Plaintiff prays that judgment be entered against each of the Defendants for:

- Actual damages in an amount to be determined at trial against each Defendant;
- Statutory and punitive damages in an amount to be determined at trial against Defendants pursuant to 15 U.S.C §§ 1681n and 1681o.
- Actual damages for the emotional distress suffered as a result of the FCRA violations in an amount to be determined at trial;
- Costs and reasonable attorneys' fees pursuant 15 U.S.C. § 1681 *et seq.*;
- Other and further relief as may be just and proper.

Dated this 7th day of November, 2012.  Respectfully submitted,

By:   s/Thomas J. Lyons
Thomas J. Lyons, Esq. (WI #1019127)
**LYONS LAW FIRM, P.A.**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
Facsimile: (651) 770-5830
tlyons@lyonslawfirm.com

Thomas J. Lyons, Jr. (MN#0249646)
**CONSUMER JUSTICE CENTER, P.A.**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
Facsimile: (651) 704-0907
tommycjc@aol.com

**ATTORNEYS FOR PLAINTIFF**

## VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

STATE OF WISCONSIN  )
                    ) ss
COUNTY OF DANE      )

I, David P. Seelman, having first been duly sworn and upon oath, depose and say as follows:

1. I am the Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendants, cause unnecessary delay to any Defendants, or create a needless increase in the cost of litigation to any Defendants, named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

                 s/David P. Seelman
                 David P. Seelman

Subscribed and sworn to before me
this 3rd day of October, 2012.

s/David R. Dinkel
Notary Public
My Commission Expires 14th July 2013.

15